TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JASON CROWLEY
Assistant U.S. Attorney
Arizona State Bar No. 025427
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Jason.Crowley@usdoj.gov
Attorneys for Plaintiff

ALEXANDRA SKINNION
Trial Attorney
Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section
1301 New York Ave., NW, 12th Floor
Washington, DC 20530
Email: Alexandra.Skinnion@usdoj.gov
Telephone: 202-878-9371
Attorneys for Plaintiff



☐ FILED    ☒ LODGED

**Mar 31 2026**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-00701-002-PHX-SMB (JZB) |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| Raul Saucedo-Huipio, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, RAUL SAUCEDO-HUIPIO, hereby agree to dispose of this matter on the following terms and conditions:

1.  **PLEA**

The defendant will plead guilty to Counts 1-4 of the Indictment. Count 1 alleges a a violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i), (a)(1)(A)(v)(I) and (a)(1)(B)(i), Conspiracy to Bring an Alien to the United States, a Class C felony offense. Counts 2-4 allege violations of Title 8, United States Code, Sections 1324(a)(2)(B)(ii) and

Title 18, United States Code, Section 2, Bringing an Alien to the United States and Aiding & Abetting.

2. **MAXIMUM PENALTIES**

a. A violation of 8 U.S.C. §§ (a)(1)(A)(i), (a)(1)(A)(v)(I) and (a)(1)(B)(i) is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of 10 years, or both, and a maximum term of supervised release of three years. A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

b. The first and second violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 are each punishable by a maximum fine of $250,000, a minimum term of imprisonment of three years, and a maximum term of imprisonment of 10 years, or both, and a maximum term of supervised release of three years. A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

c. The third violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 is punishable by a maximum fine of $250,000, a minimum term of imprisonment of five years, and a maximum term of imprisonment of 15 years, or both, and a maximum term of supervised release for three years. A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

d. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases);

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A); and

(5) pay upon conviction an additional $5,000 special assessment pursuant to 18 U.S.C. § 3014(a), unless the Court determines that the defendant is indigent.

e. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction, unless there are stipulations to the contrary that the Court accepts.

f. The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States. The defendant agrees that defendant has discussed this eventuality with defendant's attorney. The defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

3. AGREEMENTS REGARDING SENTENCING

a. Recommendation: Acceptance of Responsibility. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), if the defendant makes full and complete disclosure to the Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction pursuant to U.S.S.G. § 3E1.1. If the defendant has an offense level of 16 or more, the United States will move for an additional one-level reduction pursuant to U.S.S.G. § 3E1.1.

b. **Stipulation: Sentencing Cap.** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree that the defendant's sentence shall not exceed the high end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a). This stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing in this agreement shall preclude the defendant from moving for a downward departure, variance, or sentence below the cap, or the court from imposing a sentence below the cap.

c. **Stipulation: Role.** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree that based on the facts known to the government, the defendant was at least an organizer, leader, manager or supervisor in the criminal activity pursuant to U.S.S.G. § 3B1.1.

d. **Stipulation: Number of Aliens.** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree that based on the facts known to the government, the defendant smuggled, transported or harbored 100 or more illegal aliens pursuant to U.S.S.G. § 2L1.1(b)(2)(C).

e. **Stipulation: Dangerous Weapon.** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree that based on the facts known to the government, the defendant brandished a dangerous weapon pursuant to U.S.S.G. § 2L1.1(b)(5)(B).

f. **Stipulation: Sentences to Run Concurrent.** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree that the defendant's sentences for Counts 1-4 of the Indictment will run concurrently.

g. **Non-Binding Recommendations.** The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

///

///

## 4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss counts 5, 17-23 of the Indictment.

b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

## 5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

## 6. WAIVER OF DEFENSES AND APPEAL RIGHTS

The defendant waives: (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255

(habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. If a presentence investigation report is ordered by the Court, the defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall

be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9. **ELEMENTS**

### Conspiracy to Bring an Alien

Beginning in January 2019 and continuing through on or about August 31, 2021, in the District of Arizona:

1. The defendant knowingly and willfully agreed with others to commit the crime of Bringing an Alien to the United States; and

2. The defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The conspirators need not agree on or know every detail of the conspiracy but must work to accomplish a common illicit purpose.

The underlying offense of Bringing an Alien to the United States requires proof of the following:

1. The defendant knew or acted in reckless disregard of the fact that an alien had not received prior official authorization to come to, enter, and reside in the United States, regardless of any official action which may later be taken with respect to the alien; and

2. The defendant knowingly brought, or attempted to bring, the alien to the United States in any manner whatsoever.

3. The defendant acted with the intent to violate the United States immigration laws.

### Bringing an Alien to the United States and Aiding & Abetting

On or about May 7, 2020, and May 17, 2020, in the District of Arizona:

1. FI1, SU, and MS were aliens;

2. FI1, SU, and MS were not lawfully in the United States;

3. On or about May 7, 2020, May 7, 2020, and May 17, 2020, respectively, the defendant brought, or attempted to bring, FI1, SU, and MS to the United States in any manner whatsoever.

4. The defendant knew or acted in reckless disregard of the fact that FI1, SU, and MS had not received prior official authorization to come to, enter, or reside in the United States, regardless of any official action which may later be taken with respect to FI1, SU, and MS; and

5. The defendant committed this act, or assisted in its commission, for commercial advantage or financial gain.

## FACTUAL BASIS

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

Beginning in January 2019, I, Raul Saucedo-Huipio, led a human smuggling organization that coordinated the travel of aliens from all over the world. Operating out of Mexicali, Mexico, I and my co-conspirators, kept the aliens in various hotels and houses before arranging for their crossing either through or over the fence and/or waterways protecting the border between Mexico and the United States. In total, I smuggled well in excess of 100 aliens to the United States with the organization charging tens of thousands of dollars for the illicit journey.

I ran part of the smuggling operation out of the Hotel Plaza in Mexicali, Mexico. I was assisted in the human smuggling operation by my co-defendant, Ofelia Hernandez-Salas, as well as other people. I and my co-conspirators would rent rooms at the Hotel Plaza for individuals that would later be illegally brought to the United States. When it was time for the aliens to illegally enter the United States, members of the human smuggling organization would take them from the Hotel Plaza to the border and would often bring a ladder which was used to assist the alien in entering the United States illegally by climbing over the international border fence.

FI1 is an alien and during the time of the conspiracy had not received permission to enter or remain in the United States. FI1's family made arrangements with a smuggler in Bangladesh to send him to the United States for $20,000. FI1 was told that there was a woman in Mexicali who would help him cross into the United States. FI1 arrived in Mexicali by bus and two men were waiting at the bus stop. The men drove him to a Hotel Plaza with four or five others. I came to the hotel with Hernandez-Salas and we paid for FI1's room. FI1 stayed there for three days. Hernandez-Salas came at night with 3-4 other men and picked FI1 and others up. Once they arrived at the border, Hernandez-Salas demanded his possessions. FI1 observed that I had a gun in the back pocket of my pants. FI1 asked why they were going to take their stuff and one of the men raised his hand in a way that made FI1 afraid he was about to be hit. FI1 was also afraid he might not be allowed to cross the border if he did not comply. They took all of his belongings. Hernandez-Salas instructed FI1 and the other aliens where to cross. On May 7, 2020, FI1 and the other aliens walked to a small canal and crossed over a wood plank with the help of two men and illegally entered into the United States.

SU is an alien and during the time of the conspiracy had not received permission to enter or remain in the United States. SU left Bangladesh in November 2019, after his family made arrangements with "Hassan" to send SU to the United States. SU flew to Brazil and made his way to Mexico. When SU arrived in Mexicali, Mexico, Hernandez-Salas and I were waiting for him. Hernandez-Salas said her name was "Lupe" and said she would take care of him. At one point, I told SU to shut up or "we'll shoot you." During SU's interactions with Hernandez-Salas and I, I lifted my shirt to show SU I possessed a handgun and Hernandez-Salas wore a short shirt that displayed she had a handgun as well. Hernandez-Salas and I brought SU to a room. The room was locked from the outside. Eventually, Hernandez-Salas and I drove SU to the border in a car. Three other men, who appeared to work for the defendants, were waiting at the border. At the border, I took money and phones away from the other travelers, one by one. When one of the travelers refused, I pulled up my shirt and showed them my gun. The traveler then relinquished his money and phone. The three men who were waiting at the border showed SU and the other travelers how to crawl through a tunnel that had been dug under the fence and that was adjacent to a canal. On May 7, 2020, SU and the other aliens then illegally entered into the United States.

MS is an alien and during the time of the conspiracy had not received permission to enter or remain in the United States. MS is from Uzbekistan. MS flew through Russia to the Dominican Republic and onto Nicaragua, then

to Mexico City. She eventually arrived in Mexicali, Mexico via bus. When she got off the bus, she met me, and I offered to get her into the United States for $100-$150. I called a taxi and MS and two female travelers with young children were taken to a small house, and later to a hotel, where they waited. Hernandez-Salas and I were at the house. Eventually, I came with another person in order to pick up MS and other aliens to take them to the border. When they arrived at the border, someone put a wood plank down and they crossed a body of water. MS saw a wall and I, who was sitting in a vehicle with Hernandez-Salas, yelled "go, go, go!" On May 17, 2020, the three small children were directly behind MS as they illegally entered into the United States.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

This agreement has been read to me in Spanish, and I have carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

- 10 -

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

3.23.2B
Date

RAUL SAUCEDO-HUIPIO
Defendant

/ / /

- 11 -

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

I translated or caused to be translated this agreement from English into Spanish to the defendant on the ___23rd___ day of ___March___, 2026.

___3·23·26___
Date

_____
DAVINA GODLEY
Attorney for Defendant

## UNITED STATES' APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

Digitally signed by JASON CROWLEY
Date: 2026.03.23 17:54:24 -07'00'

_____
Date

_____
JASON CROWLEY
Assistant U.S. Attorney

- 12 -

A. TYSEN DUVA
Assistant Attorney General
Department of Justice
Criminal Division

3/24/2026

Date

ALEXANDRA SKINNION
Trial Attorney

**COURT'S ACCEPTANCE**

Date

Honorable SUSAN M. BRNOVICH
United States District Judge

- 13 -