TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JASON CROWLEY
Arizona State Bar No. 025427
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Jason.Crowley@usdoj.gov

ALEXANDRA SKINNION
Trial Attorney
Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section
1301 New York Ave., NW, 12th Floor
Washington, DC 2053
Telephone: 202-878-9371
Email: Alexandra.Skinnion@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 21-CR-00701-02-PHX-SMB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| vs. | |
| Raul Saucedo-Huipio, | |
| Defendant. | |

The United States of America submits this memorandum in support of sentencing in this case. The United States agrees with the Guidelines calculations in the PSR, and requests that the Court accept the plea agreement and sentence the defendant to a term of imprisonment within the final adjusted Guidelines, and one year of supervised release.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTS**

The United States agrees with the facts as set out in PSR ¶¶ 5-36. The defendant and

his co-conspirators operated a human smuggling organization over the course of several years. (PSR ¶ 6.) The defendant was at the center of a sprawling, transnational human smuggling conspiracy – one that did not merely move aliens across the Border, but drew them from Central Asia, Africa, and the Middle East, routing them through Mexico and ultimately into the United States. Between 2018 and 2022, the conspiracy moved well over 200 people, though the actual number is likely much higher. The human cost of the operation was visible in its infrastructure: aliens were held in hotels and stash houses in Mexico, packed into rooms with no beds, and the doors were locked from the outside. The defendant and his co-defendant then transported those individuals to the border, where they crossed illegally into the United States.

Defendant's human smuggling organization typically charged between $15,000-$20,000 to smuggle the aliens from their home countries to the United States. As noted in the PSR, the defendant and his co-defendant would often take the personal property of these aliens before they crossed into the United States – even going so far as to threaten them with firearms or the threat of future violence. Nearly every alien who identified the defendant as their smuggler noted that he visibly carried a handgun in his waistband. The defendant would require the aliens to hand over their cell phones and money before crossing the Border. (PSR ¶¶ 7, 8.)

The defendant was a manager or supervisor in this extensive alien smuggling operation. He operated as an enforcer for his co-defendant. He communicated with other smugglers in other countries, facilitated the aliens' travel, collected payment, and transported them to stash houses, hotels, and then the border. Additionally, he stole their belongings through threats and intimidation. (PSR ¶ 38.)

**II.     PLEA AGREEMENT**

The Defendant pleaded guilty to Counts 1-4 of the Indictment. Count 1 carries a range of imprisonment of 0-10 years; Counts 2 and 3 carry a range of imprisonment of 3-10 years; and Count 4 carries a mandatory minimum of 5 years' imprisonment, up to 15 years. Under the terms of the plea, the parties stipulated that the defendant's sentence

would not exceed the high end of the Guidelines range as calculated under U.S.S.G. §1B1.1(a). The parties stipulated that the defendant was at least a manager or supervisor in the criminal activity pursuant to U.S.S.G. §3B1.1. The parties also stipulated that the defendant is responsible for smuggling 100 or more illegal aliens, and that the defendant brandished a weapon during the course of the crimes. The government agreed to recommend a reduction for acceptance of responsibility.

**III.     PRESENTENCE INVESTIGATION REPORT**

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). The Sentencing Guidelines range is not presumed to be reasonable, but instead is only one of the § 3553(a) factors to be considered by the Court. *Id*.

The PSR calculates the Defendant's base offense level at 29 after adjustments. (PSR ¶ 55.)  The defendant has a Criminal History score of zero points, resulting in a Criminal History Category of I. These combine for a Guidelines range of 87-108 months for Counts 1 through 4. The plea contains a stipulation that the sentences for all counts will run concurrently.

The United States agrees with the calculations in the PSR.  Pursuant to the plea agreement, the United States respectfully requests a sentence within the Guidelines range.

**IV.     ANALYSIS OF SENTENCING FACTORS AND RECOMMENDATION**

While consideration of all the 18 U.S.C. § 3553(a) factors is important, two of the factors in particular stand out in this case. The first is the History and Characteristics of this defendant. The defendant is a 51-year-old man who has a lengthy criminal history. Although born in Mexico, the defendant first came to the United States in 1993 when he was 19 years old (PSR ¶ 75.) He has been committing crimes in the United States since he first arrived in this country. His first convictions in 1994 included theft and burglary (PSR ¶¶ 58–59.) He continued committing crimes throughout the 1990s, including receiving a conviction for alien smuggling in 1997 (PSR ¶ 60.) Notably, one of his co-defendants in

that case was his co-defendant in this case, Ofelia Hernandez Salas. He was convicted of several other misdemeanor and felony offenses in the late 1990s, and then ultimately convicted of Improper Entry by Alien in 1999. (PSR ¶¶ 58-62.) He has been deported from the United States on three prior occasions. (PSR ¶ 72.) Despite nearly three decades of contact with the criminal justice system and several convictions, the defendant has continued to smuggle aliens into the United States with impunity.

A substantial sentence is warranted by the defendant's history and characteristics; that history is far more extensive than his criminal history score suggests. Although his score is low, it obscures decades of contact with the criminal justice system, highlighting the need for specific deterrence. The defendant has been given opportunities before. He has not taken them. A significant term of incarceration is the only reliable means of protecting the public from a defendant who has demonstrated, repeatedly, that lesser consequences will not change his behavior.

The second 3553(a) factor that weighs heavily in this case is the Nature and Circumstances of the offense. The defendant played an essential role in the operation of this human smuggling organization. He was a manager or supervisor, not merely a driver or courier. The defendant and his co-conspirators smuggled hundreds of illegal aliens into the United States, denying officials of the United States any meaningful opportunity to vet these individuals and potentially endangering the security of this Country.

Defendant seeks to minimize his role in the organization by arguing that (1) he was his co-defendant's subordinate and (2) downplaying the nature of carrying a firearm during the offense.

The first argument is a nonstarter – the Sentencing Guidelines already accounts for the relative culpability of Defendant and Ms. Hernandez Salas.  Guideline § 3B1.1 differentiates between organizers and leaders on one hand and managers and supervisors on the other. Defendant has already received the benefit of the lesser adjustment. His argument is not mitigation – it is an invitation to double-discount, and the Court should decline it.

Second, Defense counsel notes that witnesses described a firearm that was only "partially visible" in the defendant's waistband. But Defendant did not need to draw or point the firearm to make its purpose clear. He pulled up his shirt while aliens were required to hand over their belongings. Deliberately exposing a weapon at the exact moment that aliens had their property taken sent a clear message. The firearm was present, visible, and made visible on purpose, in a context designed to ensure compliance. That is precisely the conduct the enhancement addresses.

Defendant's comparison to Ms. Hernandez-Salas's conduct fares no better as a mitigating argument. The relevant question is not whether another participant in the conspiracy behaved more aggressively with a firearm. The question is whether *this* defendant used a firearm to facilitate the offense. He did. The parties recognized as much when they stipulated to the enhancement in the plea agreement. The defendant should not now ask the Court to treat that stipulated fact as though it barely counts.

The scope of this conspiracy and the defendant's role at its center warrant a substantial sentence. This was not an opportunistic or isolated crime – it was a years-long, transnational operation demonstrating a disregard for human beings. Sentencing considerations – punishment, deterrence, respect for the rule of law, protection of the public – all point to the need for a significant sentence.

//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

For the above reasons, the United States respectfully requests a sentence within the Guidelines range of imprisonment, followed by one year of Supervised Release.

Respectfully submitted this 12th day of June, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Jason Crowley*
JASON CROWLEY
Assistant U.S. Attorney

A. TYSEN DUVA
Assistant Attorney General
Department of Justice

*s/ Alexandra Skinnion*
ALEXANDRA SKINNION
Trial Attorney